IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ALFREDO R. PRIETO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:15CV587–HEH |
| | ) |
| HAROLD W. CLARKE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**
(Vacating Temporary Restraining Order and
Denying Motion for Preliminary Injunction)

Plaintiff Alfredo R. Prieto ("Prieto"), a Virginia state inmate sentenced to death, brings this civil rights action under 42 U.S.C. § 1983. Prieto is currently scheduled to be executed by lethal injection at 9:00 p.m. on October 1, 2015. On September 30, 2015, the day before his scheduled execution,[1] Prieto filed this Complaint (ECF No. 1) and Emergency Motion for Temporary Restraining Order or Preliminary Injunction (ECF No. 3) in the Alexandria Division of this Court. "Prieto alleges that the manner in which Defendant intends to put him to death involves [an] unnecessary and substantial risk of serious harm in violation of the Eighth Amendment." (Compl. 19.) Specifically, Prieto speculates that the compounded pentobarbital that the Virginia Department of Corrections ("VDOC") intends to use as the first drug in its three-drug protocol will not sufficiently anesthetize him before the administration of the second and third drugs.

---

[1] Prieto's attorneys represented to the Court during the evidentiary hearing on October 1, 2015, that the filing of this action was delayed by the Virginia Department of Corrections' late notification of the chemicals to be used for his execution.

The Honorable Anthony J. Trenga, United States District Judge, granted the Motion for a Temporary Restraining Order pending a hearing on the Restraining Order set for 2:00 p.m. on October 1, 2015, when Defendants could be heard. (Order at 1, ECF No. 6.) Thereafter, Defendants filed a Motion for a Change of Venue (ECF No. 8) and a Motion to Dismiss Plaintiff's Request for Preliminary Injunctive Relief (ECF No. 11). At 6:08 p.m. on September 30, 2015, Judge Trenga granted the Motion for Change of Venue and transferred the action to this Court. An evidentiary hearing was held the following day, October 1, 2015.

The primary matters before this Court are Prieto's Emergency Motion for Temporary Restraining Order or Preliminary Injunction and Defendants' opposition thereto. For the reasons set forth below, the Court will vacate the Temporary Restraining Order and deny Prieto's Motion for Preliminary Injunction.

## I. Pertinent Procedural and Factual Background

The pertinent facts that led to Prieto's sentence of death can be found in the Court's prior opinion denying his petition for a writ of habeas corpus. *See Prieto v. Davis*, No. 3:13cv849–HEH, 2014 WL 3867554 (E.D. Va. Aug. 5, 2014). Virginia employs a three-drug protocol to perform an execution by lethal injection. *See Emmett v. Johnson*, 489 F. Supp. 2d 543, 545 (E.D. Va. 2007). The first drug in Virginia's protocol is used to render the individual sentenced to death unconscious. As has been alleged in prior cases, *see, e.g., Reid v. Johnson*, 333 F. Supp. 2d 543, 551 (E.D. Va. 2004), Prieto speculates that the first drug in Virginia's protocol will not function

2

properly and he will suffer intolerable pain from the administration of the second and third drugs.

In light of the pressure waged by death penalty opponents, it has become increasingly difficult to obtain the drugs Virginia traditionally used to render a prisoner unconscious for the execution of his sentence. For this reason, in recent years the VDOC has approved the use of midazolam and pentobarbital as the first drug in the protocol. It appears to be uncontested that the VDOC has faced difficulty obtaining either of these drugs from its traditional suppliers. In fact, Prieto's counsel was unable to identify any source in the immediate region.

The only midazolam remaining in the VDOC's custody bears an expiration date of September 30, 2015. Therefore, this drug could not be used in Prieto's execution set for October 1, 2015. In August of 2015, the VDOC contacted the Texas Department of Criminal Justice ("TDCJ") to inquire about obtaining pentobarbital from that jurisdiction. The TDCJ agreed to supply the VDOC with three vials of pentobarbital.

On or about August 26, 2015, two specifically-trained VDOC employees arrived in Texas and accepted custody of the pentobarbital. The VDOC employees personally transported the vials back to Virginia and maintained the vials at appropriate temperature controls at all times.

The pentobarbital supplied by the TDCJ was compounded by a licensed pharmacy in Texas. The TDCJ does not publicly disclose the suppliers or manufacturers of substances used in lethal injections. Upon request from the VDOC, the TDCJ supplied the VDOC with a certificate of testing that demonstrated the potency and efficacy of the

donated pentobarbital. That testing, which was conducted on April 24, 2015, reflected the donated pentobarbital had a 94.6% potency. (Defs.' Mem. Supp. Mot. Dismiss Pl.'s Req. Prelim. Inj. Relief, Ex. 1, at 1, ECF No. 12-1.) The labels on the donated pentobarbital reflect that they each should be used by April 14, 2016. (Emergency Mot. TRO or Prelim. Inj. App., Ex. A, at 12, ECF No. 4-1.)

On or about September 22, 2015, Prieto's current counsel learned the VDOC intended to use the compounded pentobarbital donated from the TDCJ in Prieto's execution. This Complaint and Emergency Motion for Temporary Restraining Order or Preliminary Injunction followed.

## II. Pertinent Allegations in the Complaint and Motion for Preliminary Injunction

"Prieto asks the Court to enjoin Defendants from carrying out the execution in the manner currently intended—relying on compounded pentobarbital . . . from a secret source—until Defendants provide evidence establishing that they exercised due diligence in acquiring and analyzing crucial information needed to assess the risks involved in using the purported compounded pentobarbital" donated by the TDCJ. (Emergency Mot. TRO or Prelim. Inj. ("Mot. TRO or Prelim. Inj.") 2–3, ECF No. 3.) With respect to the use of pentobarbital prepared by a compounding pharmacy, Prieto represents that "compounding pharmacies are generally not subject to the rigorous drug approval process and the certain checks and regulatory procedures required under FDA standards." (*Id.* at 5–6.)

4

Prieto notes that in the absence of passing a sterility test, a high risk sterile injectable such as compounded pentobarbital would have a maximum beyond use date ("BUD") of twenty-four hours if stored at room temperature, seventy-two hours if refrigerated, or forty-five days if kept in a solid, frozen state. (*Id.* at 7–8.) Prieto argues that "[t]o set a BUD beyond these periods, extensive and documented sterility testing is necessary. Even then, dates are usually set within 90 days or a bit longer in optimal conditions." (*Id.* at 8 (citations omitted).) Nevertheless, Prieto notes that the BUD for the donated pentobarbital is almost one year. (*Id.*) Prieto further observes storage conditions can dramatically affect the BUD of compounded medicine and its overall effectiveness. (*Id.*) Finally, Prieto identifies three instances where compounded pentobarbital allegedly caused an adverse reaction during an execution, only one of which involved a Texas inmate. (*Id.* at 10–11.)

### III. Additional Evidence from the Evidentiary Hearing

Three witnesses testified at the evidentiary hearing on October 1, 2015. Dr. James Ruble, an Associate Professor of Pharmacy at the University of Utah, the expert witness for Prieto, testified about the creation of compounded substances, and concerns about purity, sterilization, and degradation. He also discussed the use of compounded pentobarbital for clinical purposes. A. David Robinson, a witness for the Defendants, is the Chief of Corrections Operations for the VDOC. He testified about the reasons that the VDOC reached out to the TDCJ to obtain pentobarbital and the process of procuring it. Further, he discussed the safeguards that the VDOC has instituted to be sure that proper sedation occurs before an execution goes forth. Carlos Hernandez, a witness for

the Defendants, is the Special Operations Director for the VDOC. He testified concerning his actual obtaining, transport, and delivery of the compounded pentobarbital.

The evidence at the evidentiary hearing reflects that the VDOC officials have transported and stored the donated pentobarbital in accord with all appropriate directions. Prieto failed to adduce any persuasive evidence that the storage or transport of the donated pentobarbital has comprised its integrity.

The Court accepts the pharmaceutical expert's testimony and acknowledges that each batch of compounded pentobarbital is different. Nevertheless, the record reflects that the TDCJ utilizes a licensed pharmacy to compound its pentobarbital. The TDCJ's supplier of compounded pentobarbital has a long and proven record of producing pentobarbital that adequately anesthetizes inmates sentenced to death.

Prieto failed to adduce any persuasive evidence that the donated pentobarbital will be significantly compromised by its age. Dr. Ruble suggested poorly made pentobarbital could have a limited BUD. Dr. Ruble, however, also indicated that a BUD of three to six months for well-compounded pentobarbital would not be unexpected. The pentobarbital from the TDCJ in this case will be employed within six months of it preparation. No persuasive evidence exists that the donated pentobarbital was compounded under conditions inadequate to insure its potency for the one year represented on the bottle, much less the shorter time period at issue here.

Lastly, any potential risk of pain to Prieto by some unforeseen problem with the donated pentobarbital is diminished, if not wholly eliminated, by Virginia's specific execution protocols. After the dose of the pentobarbital is administered, a trained VDOC

officer will flush the IV line with a saline solution. The VDOC officer will then give the pentobarbital an opportunity to act. Prior to administering the second drug, the VDOC officer will pinch Prieto to assure that he is unconscious. If not assured that Prieto is unconscious, the VDOC officer will administer another dose of pentobarbital and again flush the IV line a saline solution.

## IV. Standard for a Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 135 S. Ct. 2726, 2736–37 (2015) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "The analytical framework for applying the teachings of *Winter* was clearly articulated by the United States Court of Appeals for the Fourth Circuit in *Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346–47 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010)." *Malon v. Franklin Fin. Corp.*, No. 3:14CV671-HEH, 2014 WL 6791611, at *3 (E.D. Va. Dec. 2, 2014) (parallel citations omitted). Prieto, as the party seeking a preliminary injunction, bears the burden of establishing that each factor supports granting the injunction. *Real Truth*, 575 F.3d at 346. Each factor must be demonstrated by a "clear showing." *Winter*, 555 U.S. at 22. The failure to show any one of the relevant factors mandates denial of the preliminary injunction. *See Real Truth*, 575 F.3d at 346. As explained, Prieto fails on all four.

7

## V. No Likely Success on the Merits and No Showing of Irreparable Harm

Although Prieto posits a list of potential hazards in using compounded pentobarbital supplied by the TDCJ, he fails to make any showing, much less a clear showing, that the donated drugs pose "an objectively intolerable risk of harm." *Baze v. Rees*, 553 U.S. 35, 50 (2008) (internal quotation marks omitted) (citation omitted). The United States Court of Appeals for the Fifth Circuit recently rejected nearly identical arguments by a Texas death row inmate that "compounded drugs are unregulated and subject to quality and efficacy problems." *Ladd v. Livingston*, 777 F.3d 286, 289 (5th Cir. 2015). The Fifth Circuit concluded that such arguments are "essentially speculative" and "speculation cannot substitute for evidence that the use of the drug is '*sure or very likely* to cause serious illness and needless suffering.'" *Id.* (quoting *Brewer v. Landigran*, 562 U.S. 996, 996 (2010)). The Fifth Circuit went on to observe that Texas was able to conduct its last fourteen executions with "a single-drug pentobarbital injection from a compounded pharmacy . . . without significant incident." *Id.* at 290. In fact, the Court heard evidence that the TDCJ successfully employed pentobarbital for execution on twenty-four occasions, fifteen of which took place last year.

Prieto and his expert find it difficult to believe that a compounding pharmacy could maintain the optimal standards necessary to produce pentobarbital that would maintain its effectiveness for the twelve-month period represented on the donated pentobarbital. That disbelief, however, is little more than speculation. Prieto fails to supply any persuasive explanation as to why Texas's compounding pharmacy would be inclined to provide an inaccurate BUD. A. David Robinson, the Chief of Corrections

8

Operations with the VDOC, testified that Virginia required an independent analysis of pentobarbital before it is used. While Prieto's expert expressed some reluctance about clinically using pentobarbital around its maximum use date, he declined to unequivocally say that it posed a high risk.

The evidence before the Court reflects that the compounded pentobarbital was tested and proved to be suitable to use for more than six months past Prieto's scheduled execution date. Prieto does not point to any instance where the TDCJ has used compounded pentobarbital that, although within the labeled BUD, actually failed to function appropriately.[2] Given these omissions, Prieto fails to demonstrate employing the donated pentobarbital "presents a risk that is '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Glossip*, 135 S. Ct. at 2737 (quoting *Baze*, 553 U.S. at 50). As such, Prieto fails to a make a clear showing that he is likely to succeed on the merits or suffer irreparable harm.

In addition to the above failings, Prieto is unlikely to succeed on the merits of his Eighth Amendment claim because he has completely failed to shoulder his responsibility to suggest an alternative method of execution that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." *Glossip*, 135 S. Ct. at 2737 (alteration in original) (quoting *Baze*, 553 U.S. at 52). Prieto fails to identify a

---

[2] Prieto also fails to make any showing that improper handling of the pentobarbital by either the TDCJ or the VDOC will impact its effectiveness. Moreover, "[t]he risk of accident cannot and need not be eliminated from the execution process in order to survive constitutional review." *Reid*, 333 F. Supp. 2d at 553 (alteration in original) (quoting *Campbell v. Wood*, 18 F.3d 662, 687 (9th Cir. 1994)).

"known and available" source for pentobarbital (or other appropriate sedative) that he would find acceptable.[3] *Id.*

### VI. The Balance of the Equities Favors Defendants

Evaluating the balance of the equities requires the Court to assess the harms facing both parties. *See E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 894 F. Supp. 2d 691, 708 (E.D. Va. 2012). Thus, on Prieto's side of the scale is the possibility that he may experience some incremental discomfort and associated pain in his inevitable execution should the donated pentobarbital fail to perform as expected.

Prieto's potential harm is "a thin shadow compared to the certain, profound and [significant] harm to the state if an injunction is issued." *Reid*, 333 F. Supp. 2d at 552. It is well settled that the state has "a significant interest in meting out a sentence of death in a timely fashion." *Nelson v. Campbell*, 541 U.S. 637, 644 (2004) (citing *Calderon v. Thompson*, 523 U.S. 538, 556–57 (1998); *In re Blodgett*, 502 U.S. 236, 238 (1992) (per curiam); *McCleskey v. Zant*, 499 U.S. 467, 491 (1991) ("[T]he power of a State to pass

---

[3] Prieto suggests:

> A known and available alternative to Virginia's current execution method exists: use of a fast-acting barbiturate that (1) carries FDA approval for use in humans; or (2) for which the VDOC has taken reasonable and appropriate measures to ensure appropriate safeguards, including transparency as to the execution process, the source of the drugs used, the due diligence supporting the selection of the execution process and the drugs used, and all pertinent information about the selection, purchase, storage and testing of the drug . . . .

(Mot. TRO or Prelim. Inj. 18.) Prieto, however, fails to direct the Court to any known and available source for such an FDA-approved barbiturate or other drug that meets his safety and transparency concerns that the VDOC is currently ignoring. Moreover, contrary to Prieto's suggestion, the Eighth Amendment grants him no naked right "to supervise every step of the execution process." *Whitaker v. Livingston*, 732 F.3d 465, 468 (5th Cir. 2013) (rejecting challenge by Texas death row inmates to use of pentobarbital obtained from compounding pharmacies), *cert. denied*, 134 S. Ct. 417 (2013).

10

laws means little if the State cannot enforce them")). The state's interest in finality and in meting out a sentence of death in a timely manner acquires "an added moral dimension" when the lengthy state and federal proceedings reviewing the conviction and sentence have run their course. *Calderon*, 523 U.S. at 556. At this point, the state and the victims of crime can expect the moral judgment of the state to be carried out without delay. *Id.* (citing *Payne v. Tennessee*, 501 U.S. 808 (1991)). "To unsettle these expectations is to inflict a profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." *Id.* (internal citations and quotations omitted). These harms are magnified here by the appalling number of people that Prieto has killed, raped, or otherwise injured. Accordingly, the balance of the equities firmly favors Defendants.

### VII. The Public Interest and Equitable Principles Favor Denying the Request for an Injunction

This is not an instance where there are any questions as to innocence or sufficiency of due process of an individual set to be executed. Prieto's "claim to receive a sentence of death without any unnecessary pain pales in comparison to the interest the general public has in the orderly administration of justice." *Reid*, 333 F. Supp. 2d at 553 (citing *Calderon*, 523 U.S. at 556–57). Thus, the Fourth Circuit has admonished that, "[l]ast minute stays [of execution] . . . represent an interference with the orderly processes of justice which should be avoided in all but the most extraordinary of circumstances." *Stockton v. Angelone*, 70 F.3d 12, 13 (4th Cir. 1995). The public interest in denying a stay rests firmly on the side of Defendants.

Additionally, the Court must consider the timing and nature of Prieto's request under general equitable principles. *See Nelson*, 541 U.S. at 649–50. In this respect, the Supreme Court instructed that the courts should not countenance manipulation of the judicial process and emphasized that, "there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Id.* at 650.

Prieto was sentenced to death in December of 2010, yet he waited until one day before his scheduled execution on October 1, 2015, to bring a challenge to the VDOC's method for carrying out his sentence. Ever since he was sentenced to death, Prieto was aware that the VDOC would carry out that sentence either by electrocution or lethal injection. Prieto's suggestion that he could not have not challenged the method of his execution until late September of 2015 when he discovered that the VDOC intended to perform his execution with pentobarbital compounded by a pharmacy and donated by the TDCJ rings hollow. The difficulty states face in obtaining the appropriate drugs for conducting a lethal injection has been a topic of public debate for a number of years. Prieto, who is represented by counsel with years of expertise in capital litigation, should have anticipated that the VDOC might face similar problems in executing Prieto. If Prieto acted with appropriate diligence, he could have challenged the details of his execution without unduly upsetting the state's schedule for carrying it out. By waiting as long as he did, Prieto "leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out." *Harris v. Johnson*, 376 F.3d 414, 418 (5th Cir. 2004). Prieto's delay in this

matter is of significant magnitude in and of itself to foreclose any claim to equity. *See Gomez v. U.S. Dist. Court for the N. Dist. of Cal.*, 503 U.S. 653, 653–54 (1992) (per curiam).

## VIII. Conclusion

The grant of interim injunctive relief is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in [the] limited circumstances which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (alteration in original) (internal quotation marks omitted). Each of the factors the Court must consider in granting such relief weigh decidedly and firmly against Prieto. Accordingly, Defendants' Emergency Motion to Vacate the Temporary Restraining Order (ECF No. 15) will be granted. The Temporary Restraining Order (ECF No. 6) will be vacated. Defendants' Motion to Dismiss Plaintiff's Request for Preliminary Injunctive Relief (ECF No. 11) will be granted. Plaintiff's Motion for Preliminary Injunctive Relief (ECF No. 3) will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Oct. 1, 2015
Richmond, Virginia